**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| HOSPIRA, INC. | | |
| | * | |
| | | |
| **Plaintiff,** | * | |
| v. | | Case No.: GJH-14-02662 |
| | * | |
| SYLVIA MATHEWS BURWELL, ET AL. | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This Memorandum and Order addresses Plaintiff Hospira, Inc.'s Motion for Temporary Restraining Order, ECF No. 2, and supporting memorandum, ECF No. 2-1. The Court held an emergency hearing on Plaintiff's motion today, during which the Court heard oral argument from the parties. *See* ECF No. 6. Additionally, during the hearing, the Court granted two unopposed motions to intervene filed by plaintiff-intervenor Sandoz, Inc. ("Sandoz") and defendant-intervenor Myland Institutional LLC's ("Myland"). *See* ECF No. 10.[1] Both Sandoz and Myland were given an opportunity to present argument regarding Plaintiff's pending motion. For the reasons stated below, Plaintiff's Motion for Temporary Restraining Order is GRANTED.

## I.   BACKGROUND

Plaintiff Hospira ("Plaintiff") is the New Drug Application ("NDA") holder for dexmedetomidine hydrochloride, which it markets under the brand name Precedex. This action

---

[1] At the time of oral argument, plaintiff-intervenor had not yet filed its motion to intervene on the Court's docket. The Court, nevertheless, permitted Sandoz to make an oral motion, which the Court granted.

arises out of Defendant Food and Drug Administration's ("FDA") decision on August 18, 2014 that will effectively allow generic versions of Precedex to reach the market.  *See* ECF No. 2-3. Within hours of FDA's decision, Plaintiff filed a complaint and motion for a temporary restraining order ("TRO") seeking to stay FDA's decision, as well as rescind any generic-drug approval action which FDA has taken predicated upon that decision.  *See* ECF Nos. 1, 2.

Previously, Plaintiff had obtained approval from FDA for two FDA approved uses for Precedex.  ECF No. 2-1 at 4.  These approved uses, known as "indications" include (1) "sedation of initially intubated and mechanically ventilated patients during treatment in an intensive care setting, [administered] by continuous infusion not to exceed 24 hours," and (2) "sedation of nonintubated patients prior to and/or during surgical and other procedures."  *Id.* at 4-5.  Plaintiff owns U.S. Patent No. 6,716,867 ("the '867 Patent").  The '867 Patent gives Plaintiff exclusive rights over the claimed "methods of use" of Precedex.  Plaintiff recently revised its use code which now covers "intensive care unit sedation, including sedation of non-intubated patients prior to and/or during surgical and other procedures."  *Id.* at 8.

Companies seeking to bring a generic version of a brand drug product to market may submit an Abbreviated New Drug Application ("ANDA").  *Id.* at 4.  In order to do so, however, the Food, Drug & Cosmetic Act ("FDCA") requires that an ANDA file one of four certifications with respect to each patent listed in the Orange Book[2]:  (i) patent information has not been submitted; (ii) the patent has expired; (iii) the ANDA applicant will not seek final FDA approval before the date the patent expires; or (iv) the brand's patent is invalid, unenforceable, or will not be infringed by the ANDA applicant's product ("paragraph IV").  *Id.* at 5-6 (citing 21 U.S.C. § 355(j)(2)(A)(vii)(I)-(IV)).  For purposes of this motion, the Court is only presented with issues surrounding paragraph IV.

---

[2] The "Orange Book" refers to the FDA's publication of a comprehensive listing of all drug products and their use-codes.

Typically, when an ANDA applicant submits a paragraph IV certification, it must give notice to the holder of the patent. *Id.* at 6. Following notice, the patent holder then has a 45-day period in which to bring an action for patent infringement. *Id.* If a patent infringement action is brought, it automatically stays final FDA approval of the ANDA application until the court rules that the patent is not infringed, or until 30 months have passed, whichever occurs first. *Id.* at 6 (citing 21 U.S.C. § 355(j)(5)(B)). In limited circumstances, however, an ANDA applicant can bypass the paragraph IV certification and notice requirements and seek immediate review and then approval for its generic drug. *Id.*

An ANDA applicant seeking to bypass paragraph IV must state in its application that it is not seeking approval for an approved indication (an FDA approved use for the drug) covered by the patented method of use, but, instead, is seeking approval only for an approved indication that is *not* covered by any unexpired method-of-use patent. *Id.* (citing 21 U.S.C. § 355(j)(2)(A)(viii)). This statement is commonly referred to as a "section viii statement." *Id.* FDA can approve an ANDA that relies on a section viii statement *only* when (a) FDA has approved more than one indication for the particular drug, *and* (b) at least one of those indications is not covered by any of the brand's patents. *Id.* (citing 21 C.F.R. § 314.94(a)(12)(iii)(A)). In such a situation, a generic applicant will propose labeling for the generic drug that "carves-out" from the brand drug's approved labeling the patented methods of use. *Id.* at 6-7 (citing 21 C.F.R. § 314.94(a)(8)(iv)).

FDA concluded in its August 18, 2014 letter decision that the ANDA sponsors for generic versions of Precedex could submit a section viii statement so long as its label carved out any express references to the protected uses. *See* ECF No. 2-3. Almost immediately, Plaintiff filed a complaint and motion for temporary restraining order in this Court seeking to stay the effect of FDA's decision. Plaintiff contends that, as a consequence of this decision, generic

versions of Precedex will flood the market and that Plaintiff will be without a full and adequate remedy. According to Plaintiff, this harm will occur at the moment of generic product launch; the harm will be irreparable; and this irreparable harm can be avoided only by the Court's granting Plaintiff's request for temporary and/or preliminary injunctive relief. The Court therefore held a hearing this afternoon to address the concerns raised by Plaintiff's motion for temporary restraining order.

## II.    DISCUSSION

Plaintiff seeks a TRO, pursuant to Fed.R.Civ.P. 65(b), or a preliminary injunction, pursuant to Fed.R.Civ.P. 65(a), to "stay[] the decision of the U.S. Food and Drug Administration ("FDA") in Docket No. FDA-2014-N-0087 (Aug. 18, 2014) . . . rescinding *ab initio* any generic-drug approval action which FDA has taken predicated upon that Decision, ordering FDA to recall any product sold or distributed under such an approval, and enjoining FDA from granting any further or additional approvals predicated upon the August 18 Decision in Docket No. FDA-2014-N-0087." ECF No. 2-1 at 1.

The grant of a TRO or preliminary injunction is an "'extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Dewhurst v. Cnty. Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008)). The Fourth Circuit recognizes four requirements in conjunction with the Supreme Court's ruling in *Winter v. Natural Resources* that a party must show in order to be granted a TRO or a preliminary injunction:

> (1) likelihood of success on the merits; (2) likelihood the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in movant's favor; and (4) the injunction is in the public interest.

*The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) (citing *Winter*, 555 U.S. at 20); *see also Dewhurst*, 649 F.3d at 290 (reaffirming the four requirements set forth in *The Real Truth About Obama*).  According to both *The Real Truth About Obama* and *Dewhurst*, the Fourth Circuit has determined that all four requirements must be met in order for a TRO or a preliminary injunction to be granted.  The burden placed upon Plaintiff to state a claim for a TRO or preliminary injunction is high.  For the reasons discussed below, Plaintiff has satisfied this high burden.

> ***Likelihood of Success on the Merits*** – Plaintiff has demonstrated that it is likely to succeed on the merits regarding its contention that FDA has violated 21 U.S.C. § 355(j)(2)(A)(viii) by exceeding its limited authority to approve a generic drug pursuant to a section viii statement.  Plaintiff contends that "FDA is authorized to approve a generic drug pursuant to a section viii statement only when at least one of the approved indications for use for the branded drug is *not covered by* any of the brands patented methods of use as described by the code."  ECF No. 2-1 at 15 (emphasis added) (citing 21 U.S.C. § 355(j)(2)(A)(viii).  Here, the first indication for Precedex is entirely covered by Plaintiff's use-code.  As to the second indication, there is, at the very least, some overlap.  Because its use-code statement asserts that its method-of-use patent overlaps with all approved indications, Plaintiff further contends the FDA must reject any ANDA application based upon a section viii statement.  FDA, on the other hand, contends that it can approve ANDAs for broad, general indications that may partially overlap with a protected method of use, so long as any express references to the protected use are omitted from the labeling.  Notably, however, Plaintiff's interpretation has been endorsed by the United States Supreme Court in its recent decision of *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 132 S. Ct. 1670 (2012), in which the Court stated (albeit as dicta) that "the FDA will not

approve such an ANDA if the generic's proposed carve-out label overlaps *at all* with the brand's use code."  *Id.* at 1677 (emphasis added) (citing 68 Fed. Reg. 36682–36683 (2003)).  At this juncture, the Court therefore finds that FDA's decision was at odds with relevant authority.

Furthermore, to now permit FDA to approve generic versions of Precedex on the basis that it *can* approve ANDAs for broad, general indications that overlap with a protected method of use would be tantamount to a change of the rules.  Such a change would require FDA to employ the formal rulemaking procedures of the Administrative Procedures Act, which it indisputably did not do.  Moreover, even if the Court were to assume for argument's sake that the governing statute is ambiguous under *Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S.837 (1984), given the prior understanding of the law by the Supreme Court, the Court cannot find, at this current juncture, FDA's interpretation to be reasonable.  *See Smiley v. Citibank*, 517 U.S. 735, 742 (1996) (recognizing that a "[s]udden and unexplained change [in an agency's interpretation of its regulations], or change that does not take account of legitimate reliance on prior interpretation, may be arbitrary, capricious or an abuse of discretion") (internal quotations and citations omitted).  Accordingly, the Court finds that Plaintiffs have demonstrated its likelihood of success on the merits.

*Irreparable Harm* – Generally, "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate."  *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (citing *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2d Cir. 1973).).  Thus, "when 'the record indicates that [plaintiff's loss] is a matter of simple mathematic calculation,' a plaintiff fails to establish irreparable injury for preliminary injunction purposes."  *Multi-Channel TV Cable Co.*, 22 F.3d at 551-52 (quoting *Graham v. Triangle Pub.*, 344 F.2d 775, 776 (3d Cir. 1965)).  However, "when the failure to

grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Multi-Channel TV Cable Co.*, 22 F.3d at 552; *see also Merrill Lynch, Pierce, Fenner and Smith v. Bradley,* 756 F.2d 1048, 1055 (4th Cir. 1985). Such is the case here.

Plaintiff has submitted an unrefuted declaration from Mr. Thomas Moore, President of Hospira, stating that the sale of Precedex accounts for roughly 98.4 % of its branded pharmaceutical business. *See* Declaration of Thomas Moore, ECF No. 2-4 at ¶ 16. According to Mr. Moore, Plaintiff has planned for a generic version of Precedex (offered by plaintiff-intervenor Sandoz) to enter the market in December 2014. *Id*. at ¶ 17. For the first 180 days after Sandoz's entry into the Precedex market it has been expected by both Plaintiff and Sandoz that Sandoz would be the only generic product in the market. *Id*. at ¶ 17. According to Plaintiff, if FDA's decision stands, approval of ANDAs for a generic version of Precedex would flood the market with generic products. *Id*. at ¶ 18. Indeed, according to Mr. Moore, several of Plaintiff's customers have already been approached by generic producers to inform them that it would begin selling its product on "day one" following FDA approval. *Id.* at ¶ 7. The result, according to Plaintiff, would be an erosion of its market share and price and a requirement that it terminate its U.S. brand drug sales force. *Id*. at ¶ 20. Additionally, Plaintiff contends that even if it were successful and ultimately able to prevent generics from further sales beyond what would occur in the first few days after FDA approval, its market would not return to pre-generic prices because customers typically enter into two to three year contracts to purchase drugs. *Id.* at ¶ 21. Thus, it would not be able regain lost customers or market share. As to plaintiff-intervenor Sandoz, it claims that it will lose its statutory right of a six month exclusivity period which it spent years and significant resources seeking to obtain. Moreover, the government's contention at oral

argument that there is no remedy the Court could fashion to address Plaintiff's harm only highlights the irreparability of the harm being suffered by Plaintiff's as a result of the FDA's ruling.  Under these circumstances, the Court finds that Plaintiff has demonstrated irreparable harm.

*Balance of Equities* – For many of the same reasons discussed above in the irreparable harm section, the Court finds that based on the arguments presented at the TRO hearing, the harm suffered by Plaintiff would far exceed the harm suffered by FDA or Myland.   Indeed, FDA failed to make any compelling showing as to the harm it might face should the TRO be granted. Additionally, any harm suffered by Myland, and entities similarly situated, based upon a stay of FDA's twenty-four hour old decision would pale in comparison to the harm Plaintiff would suffer as a result of generic versions of its products being widely distributed to Plaintiff's customers.  Accordingly, on balance, the Court finds Plaintiff has demonstrated that the balance of equities weigh in its favor.

*Public Interest* – Finally, the Court is satisfied that a TRO is in the public interest.  As Plaintiff contends, the public has an interest in an agency's compliance with its governing statute.  *Bayer HealthCare, LLC v. U.S. Food & Drug Admin.*, 942 F. Supp. 2d 17, 27 (D.D.C. 2013).  Following its own statute is important as the FDA's mission, in part, is to protect the public health by ensuring that products are safe and effective.  *See* 21 U.S.C. § 393(b). Moreover, individuals who are required to follow the process established by FDA could lose faith in the process if it becomes unpredictable.

## VI.    CONCLUSION

Accordingly, for the aforementioned reasons, Plaintiff's Motion for Temporary Restraining Order, ECF No. 2, is GRANTED.


Dated: <u>August 19, 2014      </u>                      <u>        /S/            </u>
                                                       George Jarrod Hazel
                                                       United States District Judge