# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

HOSPIRA, INC.,

*Plaintiff*,

and

SANDOZ, INC.

*Intervenor-Plaintiff*

v.

SYLVIA MATHEWS BURWELL,
Secretary of Health and Human Services

MARGARET A. HAMBURG, M.D.,
Commissioner of Food and Drugs,

and

UNITED STATES FOOD AND DRUG
ADMINISTRATION,

*Defendants*,

MYLAN INSTITUTIONAL LLC

and

PAR STERILE PRODUCTS, LLC

*Intervenor-Defendants.*

Civil Action No. 8:14-cv-02662-GJH

---

# MYLAN INSTITUTIONAL LLC'S MEMORANDUM OPPOSING PLAINTIFF'S
# MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 2

    I.     HOSPIRA'S *CHEVRON* STEP ONE ANALYSIS FAILS
          BECAUSE CONGRESS HAS NOT DIRECTLY SPOKEN TO
          THE PRECISE QUESTION AT ISSUE IN THIS CASE. ......................... 3

          A.     Congress Has Not Spoken to the Precise Question of
                "Overlap." ...................................................................................... 4

          B.     Dicta in *Caraco* Cannot Substitute for the Language of the
                Statute in the *Chevron* Step One Analysis. ....................................... 8

    II.    FDA'S DECISION IN THIS CASE IS CONSISTENT WITH THE
          *HOLDING* IN *CARACO* ............................................................................ 11

          A.     Hospira Has Admitted that the '867 Patent Does Not Cover
                the Procedural  Sedation Indication. ................................................. 11

          B.     The FDA's Decision Is Consistent with the Treatment of the
                ANDAs at Issue in *Caraco* ............................................................. 14

    III.    HOSPIRA FAILS TO DISTINGUISH *SIGMA-TAU* FROM THE
          PRESENT ACTION.................................................................................... 16

    IV.    FDA PROPERLY ENGAGED IN INFORMAL ADJUDICATION,
          NOT RULEMAKING................................................................................ 17

          A.     FDA's Scientific Determinations Are Entitled to Significant
                Deference. ...................................................................................... 19

          B.     FDA's Decision Is Consistent with Prior Adjudications. ................ 21

CONCLUSION ............................................................................................................. 22

## INTRODUCTION

Hospira's case rests on its assertion that, under *Chevron* step one, Congress spoke directly and unambiguously to the precise question at issue here: whether FDA can approve a carved-out out ANDA label that makes no express mention of a purportedly patent-protected method of using a drug when there remains the *possibility* that a physician may administer the drug for a protected use.  Given the language Congress used in Section 505(j)(2)(A)(viii) of the Food, Drug & Cosmetics Act ("FDCA"), such a contention is absurd.  In that provision, Congress states only that an ANDA applicant proceeding under section viii must submit a statement that a listed method of use patent "does not claim a use for which the [ANDA] applicant is seeking approval."  In no sense does Section 505(j)(2)(A)(viii) address what constitutes "overlap" between an NDA holder's "use code" and an ANDA applicant's "carved-out label," which is why Hospira relies so heavily not on the statutory language itself, but rather on a snippet of *dicta* from *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S,* 132 S. Ct. 1670 (2012).  Critically, even in that single sentence of dicta, the Court was considering the preamble to an FDA regulation, *not* Section 505(j)(2)(A)(viii).  Thus, because Congress did not speak directly to the precise question at issue here when it enacted Section 505(j)(2)(A)(viii), Hospira has no *Chevron* step one argument. Moreover, because Hospira has eschewed any argument under *Chevron* step two, the defendants are entitled to summary judgment.

Congress enacted a broadly worded statute and granted FDA the discretion to administer it, which FDA has reasonably exercised here consistent with its longstanding past practice in dealing with similar carve outs.  Acceptance of Hospira's theory would effectively engraft a new "foreseeable use" test onto the statute, the profound and adverse consequences of which were catalogued by the Fourth Circuit in *Sigma-Tau* when it barred such a test.  *Sigma-Tau Pharmaceuticals, Inc. v. Schwetz*, 288 F.3d 141, 147-48 & n.3 (4th Cir. 2002).

1

Just as significantly, a finding that the '867 patent forbids approval of generic Precedex® for Procedural Sedation would reward Hospira's blatant reversal of its admissions asserted in its patent suit against Sandoz, where Hospira stated unequivocally and repeatedly that Procedural Sedation "*is not covered by the '867 patent*." *Hospira, Inc. v. Sandoz Inc.* ("Hospira Br."), 2013 WL 298230, at *76 (Fed. Cir. 2013) (Nos. 2012-1426, 2012-1427) (Br. for Pls.-Cross Appellants Hospira, Inc.). And if the '867 patent does not cover Procedural Sedation, as Hospira has admitted, then the use code associated with that patent likewise cannot bar Mylan from marketing generic Precedex® for Procedural Sedation. Accordingly, Mylan's motion for summary judgment should be granted, and Hospira should be ordered to compensate Mylan for the damages it suffered due to the injunction Hospira insisted upon.

## ARGUMENT

Mylan focuses its argument on the merits of Hospira's claim and will not repeat here, but incorporates by reference, the arguments it has previously asserted regarding harm to Mylan and the public should the Court grant injunctive relief. Mylan also expressly incorporates by reference the merits, harms, and inappropriateness of injunctive relief arguments asserted in the Memoranda submitted by FDA and Par.[1]

---

[1] Further, the harm to Mylan in granting injunctive relief tilts the balance of equities decisively against injunctive relief. In addition, as noted by FDA in its decision letter, Congress itself created the balance between paragraph IV certifications and section viii statements, *see* AR at FDA000808-10, so the latter are not some extra-statutory dodge, as plaintiffs suggest. Upsetting the congressional balance is against the public interest. For these reasons, as well as those submitted by FDA and Par, no injunctive relief is warranted in this case.

I.     **HOSPIRA'S *CHEVRON* STEP ONE ANALYSIS FAILS BECAUSE CONGRESS HAS NOT DIRECTLY SPOKEN TO THE PRECISE QUESTION AT ISSUE IN THIS CASE.**

In *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984), the Supreme Court explained the two steps a court must employ when it "reviews an agency's construction of the statute which it administers."  According to the Court, "[f]irst, always, is the question whether Congress has directly spoken to the precise question at issue." *Id*. at 842.  This analysis—known as *Chevron* step one—is dispositive *only* if "the intent of Congress is clear," *id.*, and "unambiguously expressed" in the plain language of the statute, *id.* at 843.  "If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute[.]"  *Id*.  Instead, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* In conducting this so-called *Chevron* step two analysis, the court must recognize "that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer" and accord "deference to administrative interpretations." *Id*. at 844.

After initially rushing into this Court with stories of extreme harm and vague arguments on the merits, Hospira has finally laid its cards on the table in its summary judgment motion.  It contends that under *Chevron* step one, Congress has already "spoken to the precise question at issue" here, ECF No. 93-1 at 13, and clearly and unambiguously commanded that a section viii carve out is permissible *only* if the generic's label "does not overlap at all," even implicitly, with the brand's use code, ECF No. 93-1, at 21 (emphasis in original).  That is, according to Hospira, Congress has unambiguously forbidden FDA to approve a section viii carve-out even if the agency concludes, after a thorough review, that "any express reference to the [patent] protected use are omitted from the [generic's] labeling," which is the finding FDA made in approving

Mylan's ANDA.  *See* AR at FDA000813.  Importantly, Hospira makes no *Chevron* step two argument.  That is because Hospira knows that at step two, this Court has "a duty to respect legitimate policy choices made by" the FDA and must accord substantial deference to the agency's decision.  *Chevron*, 467 U.S. at 866.  Because such deference is fatal to its claims, Hospira rests its entire case on *Chevron* step one.  But Congress has *not* already clearly and unambiguously resolved the precise question at issue here in Hospira's favor, and therefore Mylan and the other defendants are entitled to summary judgment.

### A.   Congress Has Not Spoken to the Precise Question of "Overlap."

Hospira contends that in 21 U.S.C. § 355(j)(2)(A)(viii) ("section viii"), Congress has directly spoken to the precise questions at issue in this case.  Hospira argues that FDA violated the unambiguous command of that statute by approving ANDAs where administration to a patient for the non-protected use listed on the generic label (Procedural Sedation) could theoretically fall within the protected use that is entirely carved out of the generic label (Intensive Care Unit Sedation).  *See* ECF No. 93-1 at 14.  Hospira's entire argument is thus based on *Chevron* step one.[2]  In this case, therefore, the Court must determine whether, in 21 U.S.C. § 355(j)(2)(A)(viii), "Congress has *directly* spoken to th[is] *precise question*." *Chevron*, 467 U.S. at 842 (emphasis added).  Examination of the statute on which Hospira relies shows that Congress has not done so.

In 21 U.S.C. § 355(j)(2)(A)(viii), Congress described the statement an ANDA applicant must submit to FDA when the applicant wants to market a drug for less than all of the protected uses:

---

[2] While Sandoz also cites *Chevron*, it provides even less analysis regarding how FDA's actions in this case should be evaluated under step one.  *See* ECF No. 95 at 12-13.

> [I]f with respect to the listed drug . . . information was filed [by the brand manufacturer] . . . for a method of use patent which does not claim a use for which the [ANDA] applicant is seeking approval under this subsection, [the applicant's ANDA shall contain] a statement that the method of use patent does not claim such a use.

In other words, section viii requires only that an ANDA applicant state that a listed patent does not claim the use for which the ANDA applicant seeks approval.  *See id.*; *see also* ECF No. 93-1 at 14 (contending that FDA can "approve a generic drug pursuant to a section viii statement only if Hospira's patent (and corresponding use code) 'does not claim a use for which the [ANDA] applicant seeks [sic, "is seeking"] approval.'" (quoting 21 U.S.C. § 355(j)(2)(A)(viii))).

The statute does not speak directly to the precise, subsidiary question posed by Hospira here: what constitutes "overlap" between an NDA holder's "use code" and an ANDA applicant's "carved-out label."  The statute itself uses none of those terms, and it does not purport to prescribe *how* FDA is to go about determining whether a particular patent "does not claim a use for which the [ANDA] applicant is seeking approval."  Congress clearly left the methodology for making that determination to FDA's discretion.  Hospira would prefer that FDA approve section viii applications only where the generic's label "does not overlap at all," even in theory, with the brand's use code.  FDA concluded that Mylan's section viii statement was permissible because all "express references to the [patent] protected use are omitted from" Mylan's label.  AR at FDA000813.  Both methodologies assess whether Hospira's patent "claim[s] a use for which the [ANDA] applicant is seeking approval," 21 U.S.C. § 355(j)(2)(A)(viii), but use of the former methodology rather than the latter is decidedly *not* dictated by the text of the statute.  *See, e.g., Philip Morris USA, Inc. v. Vilsack*, 736 F.3d 284, 292 (4th Cir. 2013) (rejecting *Chevron* step one argument where the "minimal textual evidence is consistent with [two different] methodologies").

"The objective of *Chevron* step one is not to interpret and apply the statute to resolve a claim, but to determine whether Congress's intent in enacting it was so clear as to foreclose any other interpretation." *King v. Burwell*, __ F.3d __, No. 14-1158, 2014 WL 3582800, at *5 (4th Cir. July 22, 2014) (internal quotations and citation omitted).  Said another way, the question is not whether Hospira's "reading of [the statute] may be a plausible one," because "its burden is far higher than showing plausibility." *Philip Morris*, 736 F.3d at 291.  Rather, "[t]o disturb [FDA's] decision at *Chevron* step one," Hospira "must persuade [the court] that [FDA's] decision is contrary to the unambiguously expressed intent of Congress." *Id*.; *see also Asher & Simons, P.A. v. j2 Global Canada, Inc.*, 977 F. Supp. 2d 544, 548-49 (D. Md. 2013) (in the context of *Chevron* step one the "Supreme Court has cautioned that '[f]ew phrases in a complex scheme of regulation are so clear as to be beyond the need for interpretation when applied in a real context'" (citation omitted)).   Here, Hospira simply cannot show—indeed, makes no real effort to show—that Section 355(j)(2)(A)(viii) is "so clear" that FDA's hands are tied and *any* interpretation of section viii other than Hospira's preferred reading is forever "foreclosed."

At step one, courts "should employ all the traditional tools of statutory construction in determining whether Congress has clearly expressed its intent regarding the issue in question," *King*, __ F.3d __, 2014 WL 3582800, at *5, but Hospira provides the Court precious little to go on.[3]  Hospira points to no legislative history in support of its construction, nor to any other statutory provision which, when read in tandem with Section 355(j)(2)(A)(viii), compels its preferred construction.  Rather, Hospira rests entirely on the language of the statute itself, but the

---

[3] In addition to the language of the statute, the traditional tools of statutory construction include "'the overall statutory scheme, legislative history, the history of evolving congressional regulation in the area, and … other relevant statutes.'" *Philip Morris*, 736 F.3d at 289 (citation omitted).

statute merely states that an ANDA applicant proceeding under section viii must submit a statement that a listed method of use patent "does not claim a use for which the [ANDA] applicant is seeking approval." 21 U.S.C. § 355(j)(2)(A)(viii).  This language does not show that "Congress's intent is so clear and unambiguous that it 'foreclose[s] any other interpretation'" than the one advocated by Hospira, *King*, __ F.3d __, 2014 WL 3582800, at *7 (citation omitted), including FDA's quite reasonable conclusion here that Mylan's ANDA is approvable under section viii because *every* express reference to the protected use has been *entirely* removed from Mylan's generic label.

Indeed, use codes and labeling requirements are purely artifacts of FDA's own regulations; they are not statutory.  Hospira could have contended (incorrectly) that FDA interpreted the statute unreasonably, but it chose not to make any argument at *Chevron* step two. Rather, its argument relies entirely on the notion that Congress—without using the words "overlap," "at all," "label," or "use code"—has already addressed the precise question at issue here.  It has not.  Therefore, to the extent FDA engaged in any interpretation in approving Mylan's ANDA, it was interpretation of its own regulations, not statutes passed by Congress, and particularly not 21 U.S.C. § 355(j)(2)(A)(viii).  When an agency interprets its own regulations, the agency's interpretation is "controlling unless plainly erroneous or inconsistent with the regulation."  *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation omitted). Hospira makes no effort to overcome this highly deferential standard of review in this case.[4]

---

[4] While Sandoz cites 21 CFR § 314.94(a)(12)(iii) as the rule purportedly "amend[ed]" by FDA's action, Sandoz does not explain how FDA's interpretation of its own regulation would not be entitled to *Auer* deference. *See* ECF No. 95 at 20 (internal pagination).

**B.**      **Dicta in *Caraco* Cannot Substitute for the Language of the Statute in the *Chevron* Step One Analysis.**

Recognizing that the statute does not say anything about the unsupported rule that Hospira says is controlling, Hospira's counsel said at the August 26 hearing that its interpretation of the statute was made "with the benefit of the interpretation of the Supreme Court of the United States, admittedly not holding, but after all, it is the Supreme Court. . . . We know that that's what the statute says because the Supreme Court says so." ECF No. 86 at 72:21-24, 72:25-73:1. In its summary judgment papers, Hospira goes even further, stating that in *Caraco* "the Supreme Court 'has directly spoken to the precise question at issue.'" ECF No. 93-1 at 13. This analysis is so fundamentally flawed as to invite reversible error on at least two levels. First, the question is whether *Congress* has spoken directly to the precise question at issue, and the *Caraco* dicta does not constitute a holding that Congress has so spoken. Second, in *Caraco*, the Supreme Court did not determine—in *dicta* or otherwise—that in enacting 21 U.S.C. § 355(j)(2)(A)(viii), Congress unambiguously required Hospira's preferred "no overlap" construction.

As a threshold matter, the Supreme Court's statement in *Caraco* about "overlap" cannot supplant FDA's construction. A court's interpretation, including that of the Supreme Court, "trumps an agency construction otherwise entitled to *Chevron* deference *only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion*." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) (emphasis added); *see also id.* at 985 ("Before a judicial construction of a statute, whether contained in a precedent or not, may trump an agency's, the court must hold that the statute unambiguously requires the court's construction."). That cannot be the case here, where even Hospira admits that *Caraco*'s only reference to "overlap" appears in *dicta*. ECF No. 1 at 11; *see also* ECF No. 93-1 at 15. Nowhere in *Caraco* did the Supreme

Court construe 21 U.S.C. § 355(j)(2)(A)(viii) under *Chevron* step one or state that it unambiguously requires Hospira's preferred "no overlap" construction.

Rather, Hospira admits—again, as it must—that the statement in *Caraco* was based on the *preamble* in the Federal Register to the operative FDA regulations. *See Caraco,* 132 S. Ct. at 1677 (citing 68 Fed. Reg. 36682-36683 (2003)). Indeed, the only citation in the *Caraco* opinion supporting the "overlaps at all" *dicta* that Hospira relies on so heavily is to the regulatory preamble, not to a statute, much less to 21 U.S.C. § 355(j)(2)(A)(viii). If Section 355(j)(2)(A)(viii) precisely, clearly, and unambiguously dictates the "no overlap" interpretation Hospira advocates here, surely the Supreme Court would have cited that statute itself, rather than a regulatory preamble. Quite the contrary: by relying on the preamble's explanation of the FDA's regulatory scheme, the Court demonstrated its recognition of FDA's authority and discretion to promulgate rules implementing the Hatch-Waxman carve-out provisions. *See Chevron*, 467 U.S. at 843 ("'The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.'") (citation omitted). Far from supporting Hospira's argument, this is strong evidence that Congress has *not* directly spoken to the precise question at issue here, and that this is not a *Chevron* step one case at all. Moreover, the regulatory preamble that the Supreme Court did cite does not even use the word "overlap," much less set forth some definitive rule on that score.

The other statements cited by Hospira are equally unhelpful to its cause. Hospira makes much of the Solicitor General's amicus brief in *Caraco*, but as the block quotes from the amicus brief show, the Solicitor General, too, cited the Federal Register preamble for the "no overlap" proposition—not a statute, and most certainly not 21 U.S.C. § 355(j)(2)(A)(viii). *See* ECF No.

93-1 at 3, 15 (quoting, *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 2011 WL 3919720, at *5 (2011) (Brief for the United States as Amicus Curiae Supporting Petitioners)).  Indeed, Hospira points to no instance in which the Supreme Court, the Solicitor General, or the FDA has ever contended that in 21 U.S.C. § 355(j)(2)(A)(viii), Congress clearly and unambiguously announced the "no overlap" rule that Hospira seeks to engraft on the statute.  That is fatal to its *Chevron* step one argument.

Additionally, none of the statements identified by Hospira stands for the proposition it advocates, because all of the statements discuss "overlap" between the use code and the *generic label*.  For example, the Solicitor General's amicus brief quoted by Hospira discusses "overlap between the methods of using the drug *reflected in . . . the carved-out labeling* proposed in the ANDA and . . . the use code in the Orange Book."  ECF No. 93-1 at 3, 8, 15, 31.  But Hospira's "overlap" argument in this case does not compare its use code to Mylan's label.  Rather,  Hospira compares the use code to ways Hospira believes Mylan's generic drug *could* be administered in practice.  Making the proper comparison, it is undisputed that "Intensive Care Unit Sedation" has been completely carved-out of, and is not "reflected in," Mylan's label.  *See* AR at FDA000813 ("The procedural indication and related information in the [generics'] labeling do not impermissibly disclose the use of Precedex for procedures in the ICU (i.e., for the use covered by the use code.)").

Hospira also asserts that FDA purportedly conceded there was an "overlap" during the August 19 hearing.  *See* ECF No. 93-1 at 25.  Not true.  In fact, FDA's counsel made clear that "[h]ere, there is a narrow use describing the ICU and a nonprotected indication that only deals with the sedation of non-intubated patients, of which a subset could be in the ICU, but the ANDAs, the generics, won't be able to market for ICU patients.  They never sought approval to

do that." ECF No. 61 (Aug. 19, 2014, Hrg. Trans.) at 45:23-46:02. This observation is wholly consistent with FDA's decision letter, which explained that, as between Hospira's use code and Mylan's label, "[u]se in an intensive care setting is not expressly disclosed in any proposed ANDA labeling." AR at FDA000815. Hospira conflates Mylan's label with potential administration of Mylan's drug by physicians when it says this overlap in administration "defines precisely the overlap about which Hospira complains." ECF No. 93-1 at 25. FDA correctly explained why this argument runs contrary to FDA precedent in its interpretation and application of the relevant statutes and regulations. *See* ECF No. 92-1 (FDA Summ. J. Mem.) at 25-32.

## II. FDA'S DECISION IN THIS CASE IS CONSISTENT WITH THE *HOLDING* IN *CARACO*

### A. Hospira Has Admitted that the '867 Patent Does Not Cover the Procedural Sedation Indication.

The Supreme Court's decision in *Caraco* is relevant to this case, but not in the way Hospira contends. In *Caraco*, the Court expressly rejected the claim "that a use code may sweep more broadly than the patent" to which it relates, finding that this claim "is incorrect." 132 S. Ct. at 1683 n.7. Yet Hospira is seeking to do just that, expanding the reach of the use code for the '867 patent, which admittedly is limited to ICU Sedation, to now include Procedural Sedation, which was the use code associated with the now-expired '840 patent. FDA recognized as much, noting that, by grafting the use code for the '840 patent onto the use code for the '867 patent, "Hospira appears to be attempting to resurrect patent coverage to which it is no longer entitled." *See* AR at FDA000813 n.30.

FDA is correct: Hospira is seeking patent coverage to which it is no longer entitled, as it claims repeatedly in its summary judgment papers that, notwithstanding Mylan's ICU Sedation carve out, its "patent protected rights" will be "violate[d]." ECF No. 93-1 at 1; *see also* ECF No.

93-1 at 2, 3-5, 8, 18.  Indeed, Hospira goes so far as to say that it changed its use code to "make clear that the ['867] patent covered both of Hospira's approved indications."  ECF No. 93-1 at 8. Not only does such a ploy run contrary to *Caraco*, which actually detailed the ways in which brand companies abuse the use-code system, *see* 132 S. Ct. at 1678, it also constitutes an abrupt about-face from the position Hospira took in its patent litigation against Sandoz.[5]

There, Hospira assured the district court in New Jersey that the "other approved label use is related to perioperative use [Procedural Sedation] in the '840 patent, which is now expired, so the '867 patent is the patent for ICU sedation," and confirmed that "there's no patent" on the procedural sedation indication.  ECF No. 39-2, Ex. 3, at 168-69 (Transcript from *Hospira, Inc. v. Sandoz Int'l GmbH*, No. 09-cv-4591, ECF No. 397 (D.N.J. Apr. 5, 2012) at 2089-90).  In the U.S. Court of Appeals for the Federal Circuit, Hospira repeated this distinction in the clearest possible terms, asserting that "Precedex's second indication [Procedural Sedation] . . . *is not covered by the '867 patent*."  Hospira Br., 2013 WL 298230, at *76 (emphasis added).  As noted above, the Supreme Court has held that a use code cannot sweep more broadly than the underlying patent.  Because Hospira has admitted that the '867 patent does not cover Procedural Sedation, Mylan is free to include this unprotected use in its labeling, as FDA correctly determined.  AR at FDA000813-15.  The entire premise of Hospira's suit here hinges on the notion that the Procedural Sedation indication *is now* somehow covered by the '867 patent and its related use code.  This Court should not let Hospira have it both ways, and Hospira cannot

---

[5] While Sandoz recounts its "four years of litigation" with Hospira, "including a bench trial on the merits and full appellate briefing," *see* ECF No. 95 at 5, Sandoz studiously avoids disclosing that (*i*) the result of that litigation was that the '867 patent was found invalid—a finding that was only vacated at Sandoz and Hospira's joint request after settlement, and (*ii*) during that litigation, Hospira admitted that the '867 patent did not cover Precedex's Procedural Sedation indication.

escape the import and effect of its unqualified admissions that the '867 patent does not cover Procedural Sedation.

In the two hearings and multiple filings before this Court, Hospira has never explained why it is entitled to preclude Mylan from marketing its product for Procedural Sedation, an indication that Hospira has expressly admitted is not covered by the '867 patent, given its binding representations in the *Sandoz* litigation.  The patent monopoly granted to Hospira covers only the ICU Sedation indication, nothing more.  It has long been the law that "the limits of the patent are narrowly and strictly confined to the precise terms of the grant," and thus the "necessities or conveniences of the patentee do not justify any use of the monopoly of the patent to create another monopoly."  *Mercoid Corp. v. Mid-Continent Co.*, 320 U.S. 661, 665-66 (1944).  Because Mylan's label carved out ICU Sedation, Hospira has no legal right to exclude Mylan from marketing generic Precedex® for the non-covered use of Procedural Sedation.

At the August 26 hearing, the Court indicated a desire to know why Hospira did not bring a suit for patent infringement (ECF No. 86 at 17:15-19), but never received a response from Hospira.  The reason is plain:  Hospira has not asserted patent infringement against Mylan because the '867 patent does not cover the Procedural Sedation indication specified in Mylan's label.  By manipulating its use code and bringing this artifice of an APA action, Hospira seeks to expand unlawfully the reach of the '867 patent and to thereby exclude the lawful marketing of generic Precedex® for Procedural Sedation.  And by declining to bring a patent infringement suit, Hospira hopes to avoid the counterclaim recognized by the Supreme Court in *Caraco* "to force correction of a use code that inaccurately describes the brand's patent as covering a particular method of using the drug in question."  132 S. Ct. at 1675.  Over half a century of binding precedent mandates rejection of Hospira's overreach.

**B.      The FDA's Decision Is Consistent with the Treatment of the ANDAs at Issue in *Caraco***

Hospira places nearly the entire weight of its argument on *Caraco*.  But an examination of the facts of that case shows that FDA's approach here is entirely consistent with the ultimate resolution in *Caraco*.  When the case reached the Supreme Court, there was in fact no "space" for a carve-out label because there was only a single approved indication in Novo's branded label, which matched Novo's amended use code *word for word*.  *Id.* at 1677, 1679 & n.3. Because there was only a single indication in the brand's label, Caraco's generic label had nothing to carve out and instead had to match Novo's label.  *Id., see also* FD&C Act § 505(j)(2)(A)(v), (codified at 21 U.S.C. § 355(j)(2)(A)(v)); 21 C.F.R. § 314.94(a)(8)(iv).

| Proposed Generic Label | Brand Use Code | Brand Label |
|---|---|---|
| [Repaglinide, i.e., Prandin] is indicated as an adjunct to diet and exercise **to improve glycemic control in adults with type 2 diabetes mellitus** | A method for **improving glycemic control in adults with type 2 diabetes mellitus** | Prandin is indicated as an adjunct to diet and exercise to **improve glycemic control in adults with type 2 diabetes mellitus** |

The question presented to the Supreme Court in *Caraco* was whether Novo's amended use code was improperly broad, and if so, whether the United States District Court for the Eastern District of Michigan correctly permitted Caraco to pursue a counterclaim resulting in an order to Novo to correct the use code.  *Caraco,* 132 S. Ct. at 1679-80.  The Court compared Novo's amended use code to the claimed method of use in Novo's patent and found (not surprisingly) that it was improperly broad.  *Id.* at 1681-83.  The Supreme Court then remanded to the Federal Circuit so that court could fashion the appropriate relief.  *Id.* at 1688.

On or around August 20, 2012, in response to the Federal Circuit's Order, Novo amended its use code to read "Patented method of using repaglinide in combination with metformin as

indicated for improving glycemic control in adults with Type 2 diabetes mellitus."  Despite the "overlap" of the words "as indicated for improving glycemic control in adults with Type 2 diabetes mellitus," FDA approved ANDAs that carved out the use of "repaglinide in combination with metformin," including Mylan's ANDA.  This despite the fact that doctors may still use Mylan's repaglinide in combination with metformin as an off-label use.  *See generally Sigma-Tau*, 288 F.3d at 147  (discussing the "longstanding practice of Congress, the FDA, and the courts not to interfere with physicians' judgments and their prescription of drugs for off-label uses").

The result of the Supreme Court's *Caraco* decision is thus perfectly consistent with what FDA did here:  FDA allowed Mylan to carve out Intensive Care Unit Sedation from its label and approved Mylan's ANDA product for the non-covered use: Procedural Sedation.   AR at FDA000813-15.  In its August 18th letter, FDA explained in detail the underlying background and findings related to the *Caraco* decision.  AR at FDA000813-15.  Hospira studiously avoids addressing the actual factual scenario and result in *Caraco*—which only underscore the absurdity of Hospira's reliance on a single piece of dictum from that decision.  *See* ECF No. 93-1 at 23 (internal pagination); *see also* AR at FDA000813-15 (explaining FDA's repaglinide decision and *Caraco*).

The FDA's decision fully complies with Congress's intent in allowing section viii carve outs, and if any language from *Caraco* should hold sway then it is this:

> The Hatch-Waxman Amendments authorize the FDA to approve the marketing of a generic drug for particular unpatented uses; and section viii provides the mechanism for a generic company to identify those uses, so that a product with a label matching them can quickly come to market. *The statutory scheme, in other words, contemplates that one patented use will not foreclose marketing a generic drug for other unpatented ones.*

*Caraco*, 132 S. Ct. at 1681-82 (emphasis added).   The '867 patent—*which Hospira admits covers only ICU Sedation*—cannot "foreclose marketing a generic drug for [the] other unpatented" use of Procedural Sedation.

## III.   HOSPIRA FAILS TO DISTINGUISH *SIGMA-TAU* FROM THE PRESENT ACTION

As Mylan explained in its Memorandum, the Fourth Circuit in *Sigma-Tau* discussed the same issue presented here regarding whether FDA should consider only a generic drug's label or also the foreseeable use of the generic drug when determining whether the generic would encroach a protected use.   288 F.3d at 144.   To be sure, the brand drug in *Sigma-Tau* was protected by a statutory period of exclusivity rather than a patent, but FDA there had the same task as it has here:  deciding if the generics' labels have disclosed a protected use or if, instead, the labels are limited to an unprotected use.   *Compare* AR at FDA000815 (concluding that "a labeling carve out is permissible if the proposed ANDA labeling does not disclose the protected use") *with Sigma-Tau*, 288 F.3d at 146 ("The FDA determined the intended use for [the] generic drugs by relying primarily upon the proposed labeling provided by the companies").   The Fourth Circuit approved of FDA's focus on the generics' labels to determine if there was unprotected space in which they could market, and the court rejected the argument that "FDA was obligated to look beyond the labeling to what Sigma-Tau maintains is the reality of the situation, which is that most of the need for the generics—and thus most of the money to be made—lies in treating patients with the [patent-protected condition]." *Id.* at 147.

Hospira contends that *Sigma-Tau* is inapplicable here because, it claims, FDA has already determined that there will be a "partial overlap." ECF No. 93-1 at 26-27.   Yet Hospira ignores FDA's clear finding that "[u]se in an intensive care setting is not expressly disclosed in any proposed ANDA labeling."   AR at FDA000815.   So to establish the purported partial overlap,

Hospira must necessarily rely on an unsupported "foreseeable use" test and a physician's declaration to argue that Mylan's product may be used in an intensive care setting.  *Sigma-Tau* scotches this approach.  *Sigma-Tau*, 288 F.3d at 147.

Hospira also claims that *Sigma-Tau* is inapposite because "[t]his case is not an off-label use case."  ECF No. 93-1 at 27.  The opposite is true.  Mylan's label makes no mention at all of administering generic Precedex® for Procedural Sedation in an Intensive Care setting, because Mylan carved out all reference to Intensive Care Unit sedation from its label.  *A fortiori*, use of Mylan's generic product in an Intensive Care setting is at most a "foreseeable use" foreclosed under *Sigma-Tau*.

In any event, the applicability of *Sigma-Tau* to the issue before this Court was certainly appreciated by FDA, which cited the case in its August 18, 2014, decision letter for the very proposition FDA and Mylan are advancing: "the carve out of patent and exclusivity-protected labeling is generally permitted . . . if the omission does not render the proposed drug product less safe or effective for the conditions of use that remain in the labeling."  AR at FDA000811 (citing *Sigma-Tau*, 288 F.3d at 148 & n.3).  And Hospira's suggestion that *Sigma-Tau* should be limited to the Orphan Drug Act context, *see* ECF No. 93-1 at 27, ignores the Fourth Circuit's analysis in that case of Section 505(j)(2)(A) of the FDCA (codified at 21 U.S.C. § 355(j)(2)(A)), the same statutory provision considered by FDA here, *see* AR at FDA000810-11; *Sigma-Tau* 288 F.3d at 148 n.3.

## IV.   FDA PROPERLY ENGAGED IN INFORMAL ADJUDICATION, NOT RULEMAKING

As an alternative to its *Chevron* step one argument, Hospira argues that FDA announced a new rule without engaging in notice-and-comment rulemaking.  *See* ECF No. 93-1 at 27.  By making this argument Hospira is hedging its bet.  That is because this argument and Hospira's

*Chevron* step one argument are by necessity mutually exclusive.  Here Hospira argues that FDA

acted improperly *not* by adopting a rule interpreting 21 U.S.C. § 355(j)(2)(A)(viii), but by doing

so without observing the APA's notice-and-comment procedures.  A necessary predicate to this

argument is that Congress did indeed leave "a gap for the agency to fill" through rulemaking,

and that the relevant statute does not "directly address[] the precise question at issue."  *Chevron*,

467 U.S. at 843.  Moreover, Hospira has not specified what new "rule" FDA purportedly issued.

Even more conspicuous by its absence is any identification—by reference to the Code of Federal

Regulations or otherwise—of the old rule FDA purportedly overturned.  This is because FDA

did not adopt a new rule.  Instead, FDA did what it routinely does with ANDA applications: it

engaged in informal adjudication, considered the specific facts at issue, limited to the particular

carve out and labeling before it, applied its scientific expertise, and approved Mylan's ANDA,

recognizing that Mylan's section viii statement was proper and that its carved-out label made no

reference to the protected use.  *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245 (1973)

(explaining that informal adjudication involves "proceedings designed to adjudicate disputed

facts in particular cases");  *Apotex, Inc. v. Food & Drug Admin.*, 226 F. App'x 4, 5 (D.C. Cir.

2007) (unpublished).

Hospira attempts to show that FDA engaged in rulemaking by citing—without any

analysis—a number of cases for the proposition that rules "affect individual rights and

obligations."  *See* ECF No. 93-1 at 29-30.  The cited cases, however, do not address the

distinction between rules and adjudications, both of which can affect individual rights and

obligations.  Instead, they address the distinction  between "substantive" or "legislative" rules on

the one hand, and "interpretative" rules and "policy statements" on the other.  *See, e.g.*, *Morton*

*v. Ruiz*, 415 U.S. 199, 235 (1974); *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 93-94 (D.C. Cir.

1997).   Therefore, the cited cases are inapposite because all of them presume that the decision

being reviewed was rulemaking and *not* adjudication, and therefore address only what type of

rulemaking was at issue.

### A.    FDA's Scientific Determinations Are Entitled to Significant Deference.

In fact, Hospira completely ignores the thorough consideration of Mylan's label by Dr.

Amelia Luckett, an FDA anesthesiologist.   AR at FDA000978-95.   Dr. Luckett specifically

found that "[n]one of the language explicitly related to intensive care unit (ICU) sedation was

incorporated into the Mylan Dexmedetomidine Hydrochloride Injection package insert."   AR at

FDA000979.   As Hospira is aware, FDA's expertise on these scientific matters is entitled to

significant deference from this Court.   *See Fed. Power Comm'n v. Fla. Power & Light Co.*, 404

U.S. 453, 463 (1972).   Here FDA made a thorough consideration of the facts, and it would be

improper for this Court to "substitute its judgment for that of the agency."   *Citizens to Pres.*

*Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

Hospira argues that FDA must have promulgated a rule requiring full-blown notice and

comment procedures because FDA's decision to approve Mylan's ANDA "affect[s] individual

rights and obligations" by "impacting adversely Hospira's exclusivity rights, and thereby causing

Hospira to suffer significant harm and losses, and changing Hospira's right to sue and obtain a

30-month stay as Hospira was entitled to due [sic] under paragraph IV."   ECF No. 93-1 at 29.

This is flatly wrong—the only thing affecting Hospira's right to bring an infringement suit is that

fact that, as Hospira has repeatedly admitted, the '867 patent does not cover Procedural Sedation,

the only use included in Mylan's label.   Moreover, these are precisely the harms that *every* brand

manufacturer alleges *whenever* FDA approves a section viii carve out.   Hospira has simply

described the statutorily mandated difference between a paragraph IV certification and a section

viii statement.  That is, the 30-month stay provision applies only to paragraph IV filers, and when FDA approves an ANDA with a section viii statement the brand manufacturer always faces immediate generic competition.  *See Purepac Pharm. Co. v. Thompson*, 238 F. Supp. 2d 191, 195 (D.D.C. 2002) (recognizing that "FDA may approve a section viii application *immediately*, making it an attractive route for generic manufacturers") (emphasis added).  But surely not even Hospira would contend that full notice and comment procedures are required *every time* FDA approves a section viii carve out because such "individual rights and obligations" are impacted.

Further, this Court should give no weight to the disingenuous argument Hospira makes that the public docket web page listed "Rulemaking" as the "Type" of proceeding in which FDA was engaged.  *See* ECF No. 93-1 at 32.  To supply the context that Hospira omits, it is important to remember that FDA opened the docket by posing *three* questions, with multiple sub-questions to interested parties.  AR at FDA000002.  In particular, FDA sought comment on whether it would be appropriate for an ANDA applicant to *add* words to a label (rather than remove them) to carve out a protected use.  AR at FDA000002.  Tellingly, during the public comment period, the potential to add new words (and thereby foil Hospira's use code ploy) was the *only* issue on which Hospira argued that full notice-and-comment rulemaking should be required.  AR at FDA000559.

FDA, however, did not take any action that involved this issue or the creation of a new rule.  Instead, FDA decided only that a section viii statement and corresponding carve-out of Intensive Care Unit Sedation in this particular situation did not overlap and did not make the drug less safe and effective for the remaining use of Procedural Sedation.  AR at FDA000817.  Therefore, FDA made "no decision at this time on the remaining issues identified in [its] initial letter . . . ."  AR at FDA000817-18.  In other words, FDA limited its decision to the specific facts

of the ANDAs before it.   As such, FDA's decision was the result of informal adjudication, is entitled to significant deference, and did not require FDA to observe the APA's notice and comment procedures.

> **B.     FDA's Decision Is Consistent with Prior Adjudications.**

FDA cited several prior adjudications in its decision letter.   AR at FDA000813-16.   In these proceedings, FDA and Mylan have cited a number of other FDA decisions that are also consistent with FDA's action in this case.   ECF No. 92-1 at 12; ECF No. 94-1 at 24 n.6  (internal pagination).   For Hospira's part, at the August 26 hearing, Hospira's counsel dodged the Court's question: "Can you cite to me examples where [FDA] interpreted the rule the way that you are suggesting it should have been interpreted here?"   ECF No. 86 at 73:10-13.   While Hospira's counsel started by saying "I can," he cited no examples of any FDA decision or regulation, but only said "And I would begin -- the Supreme Court cited, and we did in our papers as well, to the statements of the FDA and the Federal Register . . . ."  *Id.* at 73:14-16.

Nor has Hospira cited in its motion for summary judgment a single example where FDA has followed the rule Hospira is proposing in this case.   Instead Hospira only tries to distinguish the numerous decisions cited by FDA and Mylan.   *See* ECF No. 93-1 at 22-24.   But Hospira's protestations do not support its argument.   For example, Hospira argues that some examples were related to safety and efficacy, and not application of use codes.   However, this supports Mylan's argument: only after FDA has determined that a label carves out a protected use is there any reason to determine whether the drug is safe and effective under that label.   That is, the fact that FDA is even reaching the issue of safety and efficacy shows that it has already determined the carve out is appropriate.   FDA followed that same course here—it used its scientific expertise to review Mylan's label, concluded that it carved out the protected Intensive Care Unit Sedation use, and determined that Mylan's generic product would be safe and effective for Procedural

Sedation.  Hospira has thus failed to show that FDA deviated in any way from its past policy or practice.

## CONCLUSION

For the foregoing reasons, Mylan asks this Court to issue a judgment in its favor and to deny all relief requested by plaintiffs.  Further, Mylan asks the Court to order Hospira to compensate Mylan in full for the damages Mylan has incurred during the period in which it is barred from providing its safe and effective product to the market.

Dated:  September 3, 2014                    Respectfully submitted,


                                             */S/ Shannon M. Bloodworth*
                                             Shannon M. Bloodworth
                                             Brandon M. White (*admitted pro hac vice*)
                                             PERKINS COIE LLP
                                             700 Thirteenth Street, N.W., Suite 600
                                             Washington, D.C. 20005-3960
                                             (202) 654-6204

                                             David E. Jones (*admitted pro hac vice*)
                                             David L. Anstaett (*admitted pro hac vice*)
                                             David R. Pekarek Krohn (*admitted pro hac vice*)
                                             PERKINS COIE LLP
                                             1 East Main St., Suite 201
                                             Madison, WI, 53703
                                             (608) 663-7460

                                             Bryan D. Beel (*admitted pro hac vice*)
                                             PERKINS COIE LLP
                                             1120 NW Couch Street, 10th Floor
                                             Portland, Oregon 97209
                                             (503) 727-2116

                                             Sheldon T. Bradshaw (*admitted pro hac vice*)
                                             HUNTON & WILLIAMS LLP
                                             2200 Pennsylvania Ave., N.W.
                                             Washington, D.C. 20037
                                             (202) 955-1575

                                             *Counsel for Intervenor-Defendant*
                                             *Mylan Institutional LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing MYLAN INSTITUTIONAL LLC'S MEMORANDUM OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT was available the 3rd day of September, 2014 for viewing from the Court's ECF system. Notice of this filing will be sent to all counsel of record via the Court's ECF System.


*/S/    Shannon M. Bloodworth*
Shannon M. Bloodworth